UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES ANDERSON, et al., | ) | CASE NO. 1:10CV2111 |
| | ) | |
| Plaintiffs, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| UNITED FINANCIAL SYSTEMS | ) | |
| CORPORATION, | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J.:**

This matter comes before the Court on Defendant United Financial Systems Corporation's Motion (ECF DKT #52) for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 on Counts I, III, and IX of Plaintiffs James and Susan Andersons' Complaint.  Defendant's Motion for Summary Judgment is granted, in part, and denied, in part, as follows:

   1.   DENIED as to Count I for the civil claim arising under R.C. § 4705.07 for the Defendant's Unauthorized Practice of Law.

   2.   DENIED as to Count III for Breach of Contract claim.

   3.   GRANTED as to Count IX, as to the Ohio Consumer Sales Practices Act claims.

## I.  PROCEDURAL HISTORY

On July 9, 2010, Plaintiffs filed a multi-count Class Action Complaint in Cuyahoga County Common Pleas Court against Defendant United Financial Systems Corporation ("UFSC"), alleging the following claims: Count I - Violation of R.C. 4705.07 (unauthorized practice of law); Count II - Rescission of Void Contract; Count III - Breach of Contract; Count IV - Unjust Enrichment; Count V - Fraudulent Inducement; Count VI - Fraud; Count VII - Breach of Fiduciary Duty; Count VIII - Negligent Misrepresentation; Count IX - Violations of Ohio's Consumer Sales Practices Act (R.C. 1345.01, *et seq.*).

This action was removed from the Cuyahoga County Common Pleas Court on September 21, 2010.  On October 20, 2010, Defendant filed a Motion for Judgment on the Pleadings, which Plaintiffs opposed.  On January 22, 2011, the Court granted Defendant's Motion, in part, as to Count II, Count IV, Count V, Count VI, Count VII, Count VIII, and the class-action claims in Count IX of Plaintiffs' Complaint.  On March 21, 2012, the Court denied class certification on Plaintiffs' remaining claims in Count I and Count III.  Plaintiffs' individual causes of action in Count I, Count III, and Count IX still remain.

## II.  FACTS

Defendant, an insurance marketing agency with its main office in Indiana, originally contacted Plaintiffs prior to October of 2006 as part of its marketing efforts for the sale of Defendant's estate planning materials. (ECF DKT #53, Jim Anderson Deposition at p. 23:5).

Plaintiffs responded to that initial solicitation, which resulted in a face-to-face meeting with Tim Sullivan, Defendant's Estate Planning Associate ("EPA") on November 30, 2006.

(ECF DKT #53, Jim Anderson Deposition at p. 23; 27:19-22).  Mr. Sullivan described UFSC's estate planning assistance services and the flat fees that ranged from $695.00 to $2495.00.  Plaintiffs executed an Agreement with UFSC for financial and estate planning services, and paid $2495.00.  According to the Agreement, Plaintiffs authorized UFSC "to engage an independent attorney to work with the client in regards to the possible preparation of legal documents."

Ian Humphrey, a "Panel Attorney" that Defendant had assigned to Plaintiffs, later met with Plaintiffs and drew up the necessary documents.  On February 27, 2007, non-attorney agents of UFSC presented the documents for signature and aggressively attempted to convince Plaintiffs to invest in Defendant's financial and insurance products.  Plaintiffs declined.

On February 22, 2010, Plaintiffs received a notice from UFSC, pursuant to an order of the Supreme Court of Ohio.  This notice informed Plaintiffs that the Supreme Court of Ohio ruled that UFSC had "engaged in the unauthorized practice of law by marketing and selling to residents of the state of Ohio living trusts and other estate-planning and transfer documents." Plaintiffs were advised to have their estate-planning documents reviewed by an attorney of their own choosing, not affiliated with, nor paid by, UFSC.

### III.  LAW AND ANALYSIS

**A.  Summary Judgment Standard**

Summary judgment should be granted when the moving party proves that no genuine issue of material facts exists and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  To survive a motion for summary judgment, a plaintiff may not simply rest upon mere allegations, but instead must demonstrate

the existence of evidence or testimony supporting the claims asserted.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The moving party has the burden of demonstrating through the evidence that the opposing party cannot establish any elements of its claims.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Once the moving party meets the requirement of Rule 56 by either showing that no genuine issue of material fact remains or that there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion, which "must set forth specific facts showing that there is a  genuine issue for trial." *Anderson*, 477 U.S. at 256.  If the non-moving party fails to satisfy its burden, a court is mandated to grant summary judgment.  *Celotex*, 477 U.S. 317.

**B. Plaintiffs have presented sufficient evidence to show actual damages**

Defendant asserts that it is entitled to judgment as a matter of law with regard to Plaintiffs' claim for the civil damages under R.C. § 4705.07 for the unauthorized practice of law.  For the following reasons, Defendant's Motion with regard to Count I is denied.

Defendant first asserts that Plaintiffs present no evidence that any employees of UFSC provided any legal advice or recommendations during the course of their interactions.  Defendant claims that Tim Sullivan, whom Plaintiffs met with during their initial meeting after the solicitation, did not provide legal advice or prepare legal documents for Plaintiffs' estate plan on November 30, 2006.  Defendant also claims that Jo Shields, whom Plaintiffs met with to execute their estate planning package and documents, did not "provide legal advice or recommendations when she delivered the estate planning package to the Andersons."

Defendant ignores, and Plaintiffs point out, that in *OSBA v. United Fin. Sys. Corp.*, 124 Ohio St.3d 301 (2010), Defendant and the Ohio State Bar Association entered into a stipulated Consent Decree with the Supreme Court of Ohio which reads, in part, as follows:

> "As a result of the activities of Respondent in Ohio, and of its activities at its principal place of business in the state of Indiana designed and intended to take effect in Ohio, over 2,000 residents of the state of Ohio have purchased estate-planning documents that may be of doubtful utility.  In any event, these persons *have been subject to the unauthorized practice of law by Respondent*." *Id.* at ¶ 5 (emphasis added).

Plaintiffs' judicial estoppel arguments aside, R.C. § 4705.07 unequivocally states that "only the supreme court may make a determination that any person has committed the unauthorized practice of law in violation of division (A)(3) of this section."  If the Defendant wished to argue that it did not commit the unauthorized practice of law, it should have made such an argument to the Supreme Court of Ohio, rather than conceding its unlawful practices in a consent judgment.  Defendant's first argument is completely without merit.

Defendant next argues that Ian Humphrey was an independent attorney, and acted as an independent attorney, when providing legal advice and recommendations to the Andersons on January 27, 2007.  Again, Defendant ignores the Consent Decree approved by Supreme Court of Ohio, acknowledging its unauthorized practice of law.  Whether or not Humphrey was an independent attorney is irrelevant for determining whether or not Defendant violated R.C. § 4705.07.  That issue has already been resolved by the Supreme Court of Ohio, and is not subject to reconsideration in this Court.

Defendant's second basic argument is that Plaintiffs did not present any evidence of *actual damages* pursuant to R.C. § 4705.07(C)(2).  In awarding damages under the statute, the Court shall consider the following:

    (a)    The extent to which the fee paid for the services that constitute the unauthorized practice of law in violation of division (A)(3) of this section exceeds the reasonable fees charged by licensed attorneys in the area in which the violation occurred;

    (b)    The costs incurred in paying for legal advice to correct any inadequacies in the services that constitute the unauthorized practice of law in violation of division (A)(3) of this section;

    (c)    Any other damages proximately caused by the failure of the person performing the services that constitute the unauthorized practice of law to have the license to practice law in this state that is required to perform the services.

    (d)    Any reasonable attorney's fees that are incurred in bringing the civil action under division (C)(1) or (2) of this section.

Defendant argues that Plaintiffs have failed to introduce any evidence of actual damages pursuant to the statute, and that Count I should be adjudicated in favor of the Defendant. The Court disagrees with Defendant's position.

In deposition, Plaintiffs James and Susan Anderson testified that they received an invoice of $660 from their attorney to review the estate planning documents prepared by Defendant. This is direct evidence of the actual damages described in § 4705.07(C)(2)(b). While Defendant presents evidence that could show that Plaintiffs' $660 invoice is for services unrelated to seeking legal advice to check the efficacy of the documents the Defendant created, credibility of the statement or of Plaintiffs themselves is not a question for summary judgment. The credibility of a witness or a disputed material fact is a question reserved for the trier of fact.

Defendant also argues that the Supreme Court of Ohio decided not to levy civil penalties against it in *Ohio State Bar Association v. United Fin. Sys. Corp.* Defendant claims that its cooperation with the investigation and its subsequent cessation of all estate planning

practices foreclose liability in a civil suit for damages brought by a former client. Their reliance upon such an argument is unfounded. According to the statute, "any person who is damaged by another person who commits [unauthorized practice of law] may commence a civil action to recover actual damages... upon *a finding by the supreme court that the other person has committed an act that is prohibited by the supreme court as being the unauthorized practice of law..."* § 4705.07(C)(2).

The statute does not require that the Supreme Court of Ohio levy penalties against a person who has committed the unauthorized practice of law in order for an injured party to bring a claim. The statute simply requires the Supreme Court to determine that the defendant committed the unauthorized practice of law, which, with regard to United Financial, is clearly the case. While it is commendable that Defendant has owned up to its prior illegality and has cooperated fully with the Supreme Court of Ohio in mitigating any possible damage that may have resulted from its unauthorized practice, such actions, after the fact, do not foreclose civil liability for Defendant's admitted unauthorized practice of law.

**C. Breach of Contract claim**

Defendant next contends that Plaintiffs have failed to introduce sufficient evidence to support their claim for breach of contract. The elements of a claim of breach of contract are: (1) a contract existed, (2) the plaintiffs fulfilled their obligations, (3) the defendant failed to fulfill its obligations, and (4) damages resulted from the failure. *Lawrence v. Lorain Cty. Community College*, 127 Ohio App.3d 546, 549 (9th Dist. 1998).

The contract in question is the "Agreement and Receipt" with UFSC, which set forth the following terms:

1. UFSC, through its undersigned Estate Planning Assistance ("EPA") or other UFSC representative, has and may in the future provide general information and services related to financial and estate planning which may be advantageous to the Client ("UFSC's Services).

2. As part of UFSC's Services, UFSC recommends that the Client work with an attorney to prepare legal documents which the Client and attorney believe are appropriate to meet the estate planning goals of the Client, which may include such documents as Wills, Trusts, Powers of Attorney, deeds and other documents (hereinafter "Legal Documents").

3. The Client hereby authorizes UFSC, as the Client's agent, to engage an independant [sic] attorney (hereinafter "Attorney") to work with the Client in regards to the possible preparation of Legal Documents.

4. In the event the Client and the Attorney enter into an attorney-client relationship, UFSC will pay the Attorney engaged by UFSC the legal fees charged by the Attorney for the preparation of Legal Documents.*

* Note that the Client will be responsible to pay for incidental costs associated with recording of deeds, transfers of titles, etc.

(Ex. A, ECF #1-2, Page ID# 41). Plaintiffs paid $2495.00 in consideration for these terms.

Defendant asserts that there is no evidence that UFSC failed to meet its obligations under the contract. Defendant claims that Attorney Humphrey was entirely independent and the Plaintiffs failed to introduce any evidence to the contrary. The Court disagrees and finds that Plaintiffs have introduced sufficient evidence that could show that Attorney Humphrey was not independent.

Plaintiffs rely on the findings in *Columbus Bar Ass'n v. Fishman*, 98 Ohio St.3d 172 (2002), a trust mill case with very similar facts to the case at bar. In that case, the Court determined that the respondent attorney aided the unauthorized practice of law by serving as the "independent" attorney for American Heritage Corporation, a company that offered estate planning services for elderly or retirement-aged individuals. Like UFSC, AHC would send

"interviewers" to the homes of those who responded to solicitations and go over possible estate planning strategies. Once the client filled out an information questionnaire and paid an up-front fee, the information was used to create legal documents, such as wills and trusts. Those documents were sent to the respondent attorney, who would approve the documents and assign "delivery agents" to carry out the execution of the documents. For each client that the attorney approved, he was given $150 for his participation. The court ruled that the attorney was not "independent," noting:

> [I]t is not enough for an attorney to look over the shoulders of non-attorneys in a process through which clients are advised about and accede to a living trust. In that situation, the reviewing attorney enters the relationship too late - the non-attorney has already processed information for the client about his or her affairs and has generated a legal solution of which client is already convinced. Compound this scenario with the fact that the non-attorney has financial stake in the legal solution, and there can be no real confidence in the attorney. *Id.* at 175.

Plaintiffs have presented similar evidence in the present case that would show Attorney Humphrey is not independent. Plaintiffs have testified that they paid for UFSC's services nearly two months before they met with Attorney Humphrey; that Attorney Humphrey only met with them twice; that Attorney Humphrey was not present for the delivery, execution, or signing of the documents; and that Attorney Humphrey only received between $150 and $225 for his services in executing the estate planning documents. These facts are sufficient to show that reasonable minds could differ whether Attorney Humphrey was not independent and that Defendant breached its contract to provide independent counsel.

**D.  Consumer Sales Practices Act Claims**

Defendant argues that the statute of limitations, on Plaintiffs' Consumer Sales Practices Act ("CSPA") claims under R.C. § 1345.10(C), has run, and that Plaintiffs are

foreclosed from asserting such a claim.  Although Plaintiffs have not challenged Defendant's argument in their Opposition, the Court is required to determine whether Defendant is applying the correct rule of law.

Under the CSPA, the discovery rule applies to the time within which a person may rescind a contract.  R.C. § 1345.09(C); *see Cypher v. Bill Swad Leasing Co.*, 36 Ohio App.3d 200, 202 (1987).  However, no such discovery rule applies to actions for damages under §1345.10(C), which sets forth an absolute two-year statute of limitation.  *Luft v. Perry Cty. Lumber & Supply Co.*, Franklin App. No. 02AP-559, 2003-Ohio-2305, ¶ 25.

The contract in question was executed on November 30, 2006.  The latest that the Plaintiffs could bring a claim under the CSPA would be November 30, 2008.  The Complaint was not filed until July 9, 2010, over a year and a half beyond the statute of limitations.  Defendant's Motion for Summary Judgement with regard to the CSPA is granted.

**E.  Conclusion**

The Court denies Defendant's Motion for Summary Judgment regarding Plaintiffs' claims for Unauthorized Practice of Law (Count I) and Breach of Contract (Count III).  The Court grants Defendant's Motion for Summary Judgment regarding Plaintiffs' claim under the Consumer Sales Practices Act (Count IX).

**IT IS SO ORDERED.**

s/ Christopher A. Boyko
**CHRISTOPHER A. BOYKO**
**United States District Judge**

**Dated:  October 5, 2012**